UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA H.,[1]<br><br>   Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY, et al.,<br><br>   Defendants.[2] | Case No. 23-cv-04225-SI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 9, 11 |

  Plaintiff Cristina H. moves for summary judgment to reverse the final administrative decision of the Commissioner of Social Security ("Commissioner"), who found that plaintiff was not disabled under Title II of the Social Security Act. Dkt. No. 9. Defendant cross-moves to affirm the decision. Dkt. No. 11. Having considered the briefs and the administrative record, and for the reasons set forth below, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and REMANDS this action for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

  On October 3, 2019, plaintiff protectively filed an application for Social Security Disability Insurance ("SSDI") benefits. Administrative Record ("AR") 172, 210. Plaintiff alleged February

---

[1] The Court partially redacts plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

[2] In the case caption, the Court substitutes Martin J. O'Malley, who is the current Commissioner of Social Security, for his predecessor, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d).

1   14, 2018, as the onset date for her disabilities.[3]  Plaintiff's date last insured is September 30, 2024.

2   AR 23.  The Social Security Administration denied her benefits application both initially and on

3   reconsideration.  AR 69, 85.  On September 15, 2022, Administrative Law Judge ("ALJ") Kevin

4   Plunkett held a telephonic hearing at which plaintiff was represented by counsel.[4]  AR 23, 42.

5   Immediately following the hearing, plaintiff amended the alleged disability onset date to August 11,

6   2021.  AR 23, 54, 205.  On October 17, 2022, the ALJ issued a decision denying plaintiff's claim.

7   AR 17-33.  Plaintiff was 54 years old on the amended alleged onset date and was 55 on the date of

8   the ALJ's decision.

In the decision, at step two of the five-step disability inquiry, the ALJ found plaintiff has the following severe impairments: mild degenerative disc disease in the cervical and lumbar spine; mild acromioclavicular degenerative joint disease and tendonitis/tendinosis in the left shoulder; mild bilateral carpal tunnel syndrome; Chiari I malformation; left Bell's Palsy; and obesity.  AR 25.  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b):

> . . . she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8-hour workday, stand 6 hours in an 8-hour workday, and walk 6 hours in an 8-hour workday.  She can push/pull as much as she can lift/carry.  She can frequently reach overhead bilaterally, frequently handle bilaterally, and frequently finger bilaterally.  The claimant can frequently climb ramps/stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, scaffolds.

AR 28.  Based on this RFC finding, and relying on the opinion of a vocational expert who testified at the hearing, the ALJ determined that plaintiff is capable of performing her past relevant work as a cleaner.  AR 32.  Therefore, the ALJ found plaintiff not disabled and denied her SSDI application. AR 32-33.

---

[3] Defendant's brief erroneously states the alleged disability onset date was February 2014. *See* Dkt. No. 11 at 2.

[4] A different attorney now represents plaintiff in this appeal.

1  Plaintiff filed a request for review before the Appeals Council, which denied the request on
2  July 27, 2023. AR 1. Accordingly, the ALJ's October 17, 2022 decision became the final decision
3  of the Commissioner. Plaintiff sought review in this Court under 42 U.S.C. § 405(g). Dkt. No. 1.

## LEGAL STANDARD

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.* Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Plaintiff argues that the ALJ erred: (1) in assessing plaintiff's symptom testimony, and (2) in evaluating the opinion of treating medical source Dr. Martinovsky. Plaintiff requests the Court remand this case for further administrative proceedings. Defendant cross-moves for summary judgment and asks that the Court affirm the ALJ's decision as based on substantial evidence.

3

## I. Plaintiff's Symptom Testimony

### A. Legal Standard

The Ninth Circuit follows a two-step test for deciding what weight to give to a plaintiff's symptom testimony. At step one, the ALJ must ascertain whether the plaintiff has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the plaintiff satisfies step one, and there is no evidence of malingering, then at step two, the ALJ can reject the plaintiff's testimony about the severity of his symptoms only by providing specific, clear, and convincing reasons for doing so. *Id.* If the ALJ finds that the plaintiff's testimony regarding the severity of his symptoms is not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo*, 871 F.3d at 678.

### B. ALJ's Findings

The ALJ cited to the plaintiff's function report that she completed in November 2019. *See* AR 28 (citing Ex. 4E). The ALJ summarized some of the medical history and doctors' opinions in the record.[5] The ALJ observed that "[t]reatment remained fairly conservative." AR 29. In evaluating the symptom testimony, at step one, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 29. The ALJ cited no evidence of malingering. Proceeding to step two, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ concluded as follows:

---

[5] As will be discussed below, the ALJ did not discuss or appear to consider a detailed examination report by plaintiff's treating physician Dr. Martinovsky. *See* AR 525-537.

4

> Lastly, I find the claimant's assertions persuasive but only to the extent consistent with the residual functional capacity. Her reports of ability to lift only four pounds and walk one block at a time are not consistent with the examinations, which fail to show ongoing strength deficits affecting the extremities. There are no findings of muscle atrophy or diminished muscle tone that would suggest such limited use of the arms and legs. The claimant's reports are also inconsistent the [sic] imaging studies and EMG/NCS that shows [sic] mild pathology and her conservative course of treatment, limited to several sessions of physical therapy in 2018, carpal tunnel injections in January 2022, and medication.

AR 32.

### C. Analysis

Here, the ALJ failed to provide "specific, clear, and convincing" reasons for rejecting plaintiff's symptom testimony despite finding no evidence of malingering. *See Trevizo*, 871 F.3d at 678. An ALJ's "finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-56 (9th. Cir. 2007)). The ALJ's circular statement that plaintiff's testimony is "persuasive but only to the extent consistent with the residual functional capacity," *see* AR 32, is precisely the sort of generic "boilerplate statement" the Ninth Circuit has rejected for failing to "identify which parts of the claimant's testimony were not credible and why." *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102 (9th Cir. 2014)).

For instance, the ALJ focused solely on plaintiff's ability to walk and lift, without addressing her ability to reach overhead with her left arm. Plaintiff's problems with shoulder and neck pain stem from an injury she sustained in late January 2018, during her work as a housekeeper at a hotel. AR 45-46, 526, 528, 535. At the hearing, plaintiff testified that she cannot raise her arms, and that her pain runs from her neck into her shoulder, all the way down her hands. AR 46. This is consistent with her treating doctor's diagnosis of rotator cuff syndrome, chronic pain syndrome, and cervicalgia. *See* AR 534. Throughout plaintiff's treatment in 2019, her medical providers

1    repeatedly advised that plaintiff should not do any reaching with the left upper extremity. *See* AR
2    496 (July 29, 2019 treatment note), 516 (June 26, 2019 treatment note), 521 (May 29, 2019 treatment
3    note); *see also* AR 557 (February 2018 note from treating orthopedic surgeon Dr. O'Hara that
4    plaintiff is "precluded from repetitive use of her left shoulder at shoulder height and above"), 1190
5    (March 2020 consultative examiner Dr. Sharma which limited "reaching overhead above the
6    shoulder with both the arms to occasionally"). Numerous physical examinations document limited
7    range of motion in the left shoulder. *See* AR 448, 515, 520, 534, 553, 1744. In assigning an RFC
8    that included frequent bilateral overhead reaching, *see* AR 28, the ALJ implicitly rejected plaintiff's
9    testimony regarding her inability to raise her arms, without providing a reason for doing so.

10   The ALJ referenced plaintiff's "conservative course of treatment," apparently rejecting her
11   testimony because she received "several sessions of physical therapy in 2018, carpal tunnel
12   injections in January 2022, and medication." AR 32. The record shows that by June 2018 plaintiff
13   had had approximately twelve sessions of physical therapy. AR 532. She received five or six
14   sessions of acupuncture. AR 539, 807. All of this must be viewed in the context that plaintiff's
15   care was provided pursuant to her workers' compensation claim, and the record reflects much back
16   and forth between her treating doctor and the claim administrator. In a November 2018 letter asking
17   the insurer to reconsider its decision to deny certain prescription requests, Dr. Martinovsky noted
18   that plaintiff "had extensive physical therapy without significant pain relief and 5 acupuncture
19   sessions without significant pain relief." AR 807. In July 2019, Dr. Martinovsky requested
20   authorization for twelve sessions of chiropractic therapy for the lumbar spine, but the record reflects
21   that her workers' compensation denied this request. *See* AR 418, 420, 496. Her doctors considered
22   but did not recommend surgery. AR 807. On the whole, the record shows that plaintiff pursued the
23   treatment recommended to her, was unable to pursue certain treatment due to insurance coverage,
24   and was not deemed a candidate for surgery. The ALJ's rejection of plaintiff's symptom testimony
25   writ large based on a "conservative course of treatment" is neither "link[ed] . . . to the particular
26   parts of the record supporting [the ALJ's] non-credibility determination[,]" nor is it supported by
27   substantial evidence in the record. *See Brown-Hunter*, 806 F.3d at 494; *see also Gonzalez v. Astrue*,
28   No. C-10-04570 EDL, 2012 WL 424403, at *13 (N.D. Cal. Feb. 9, 2012) (finding the ALJ had not

1  provided clear and convincing reasons for rejecting the plaintiff's pain testimony where the plaintiff
2  had testified that conservative treatments did not alleviate pain).

3  Defendant also emphasizes that the ALJ found plaintiff could "engage[] in normal
4  activities." Dkt. No. 11 at 5 (citing AR 27). However, the ALJ made this observation in an entirely
5  different portion of the decision, when considering whether plaintiff had any limitations in "the
6  broad functional areas of mental functioning set out in the disability regulations for evaluating
7  mental disorders . . . ." *See* AR 26-27. The ALJ did not cite plaintiff's engagement in "normal
8  activities" as a reason to reject plaintiff's symptom testimony, and this Court is constrained to review
9  only those reasons the ALJ asserted. *See Brown-Hunter*, 806 F.3d at 494 (citing *Connett v.*
10 *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).[6]

11 In sum, the ALJ erred by failing to provide clear and convincing reasons supported by
12 substantial evidence in the record for rejecting plaintiff's symptom testimony.

## II. Opinion of Dr. Martinovsky

Plaintiff argues the ALJ erred by failing to properly assess the medical opinion of her treating physician Dr. Gary Martinovsky, M.D.

### A. Legal Standard

For applications filed on or after March 27, 2017, such as here, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's

---

[6] Even if the ALJ had cited plaintiff's activities as a reason to reject her testimony, the ALJ misstated plaintiff's function report. The ALJ stated plaintiff "could walk one block before needing to rest 30 minutes." AR 28. This portion of the function report in fact reads:

> How far can you walk before needing to stop and rest?
>
> [Plaintiff:] Only a block & I have to stop – half hour if I do it slowly.
>
> If you have to rest, how long before you can resume walking?
>
> [Plaintiff:] I rest 10 minutes & then continue walking.

AR 233.

7

relationship with the claimant—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Under the revised regulations, 20 C.F.R. § 404.1520c, the ALJ will consider medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5) . . . ." 20 C.F.R. § 404.1520c(a). Those factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c). The most important factors are: 1. supportability ("the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence"); and 2. consistency ("the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1), (2)) (internal alterations omitted). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source." *Id.* at 791 (citing 20 C.F.R. § 404.1520c(b) (internal quotation marks omitted)).

### B.   ALJ's Findings

In determining plaintiff's RFC, the ALJ addressed Dr. Martinovsky's opinion as follows:

> In May of 2019, Dr. Martinovsky provided restrictions against lifting, carrying, pushing, or pulling more than 10 pounds and all reaching with the left upper extremity (Exhibit 3F/116). I find the opinion of Dr. Martinovsky unpersuasive. Dr. Martinovsky's own examination findings do not support his conclusions. For example, an examination conducted by Dr. Martinovsky on the same date he provided the aforementioned opinion found that the claimant possessed normal bulk and tone of all major muscle groups in the bilateral upper extremities. He further found that the claimant ambulated without the use of an assistive device and that her gait was normal (Exhibit 3F/115). Moreover, the opinion is unpersuasive because it is inconsistent with the remaining medical records summarized in the preceding paragraphs, including the overall treatment record that shows limited treatment since the alleged onset date, mild findings in the imaging studies, and mild findings in the electrodiagnostic studies.

AR 31-32.

**C.     Analysis**

Plaintiff argues the ALJ erred in failing to provide an explanation supported by substantial evidence for rejecting Dr. Martinovsky's medical opinion. The Court agrees, given that the ALJ's decision does not address at all the detailed "Primary Treating Physician's Comprehensive Medical Legal Evaluation Report" dated May 31, 2019. *See* AR 525-537.

At the outset, the Court notes that what the ALJ labeled as "Dr. Martinovsky's opinion" appears to be a treatment note from May 29, 2019, when plaintiff was seen by Nurse Practitioner Natalya Golovanov, a member of Dr. Martinovsky's treatment team. *See* AR 31 (citing Ex. 3F/115-116), 519. Plaintiff saw this treatment team on a roughly monthly basis during this time period. *See* AR 514-516 (June 26, 2019 visit with Natalya Golovanov, NP), 494-496 (July 29, 2019 visit with Clay Vance), 447-449 (August 26, 2019 visit with Natalya Golovanov, NP). However, the ALJ did not discuss any of the other visits with the treatment team outside of the May 29, 2019 visit.

Nor did the ALJ address the detailed twelve-page report that Dr. Martinovsky authored on May 31, 2019. *See* AR 525-537. Dr. Martinovsky reviewed numerous medical records and conducted a physical examination. Dr. Martinovsky diagnosed plaintiff with rotator cuff syndrome, chronic pain syndrome, and cervicalgia, attributing the orthopedic injuries of the neck, left shoulder, and both hands to plaintiff's employment. AR 534. Dr. Martinovsky concluded that plaintiff "may return to work with restrictions of no lifting, pushing or pulling weights over 20 lbs, no repetitive bending, crawling or stooping." AR 536. Dr. Martinovsky's opinion that plaintiff should not do repetitive bending or stooping is consistent with the March 2020 opinion of consultative examiner Dr. Satish Sharma, M.D., who found plaintiff could only occasionally bend or stoop. *See* AR 1190. Curiously, the ALJ found Dr. Sharma's opinion "persuasive" but gave no reason for rejecting Dr. Sharma's finding that plaintiff should be limited to occasional bending and stooping. *See* AR 30. Instead, the ALJ assigned plaintiff an RFC that called for frequent stooping, kneeling, crouching, and crawling. AR 28.

Moreover, under the new regulations, when assessing a medical opinion, "an ALJ no longer needs to make specific findings regarding [the] relationship factors[.]" *Woods*, 32 F.4th at 792. Nevertheless, the relationship factors remain relevant "when assessing the persuasiveness of the

9

source's opinion." *Id.* In assessing the relationship, the ALJ may consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the specialization of the treating physician. 20 C.F.R. § 404.1520c(c). Here, that the ALJ referenced only one treatment note out of several and did not address Dr. Martinovsky's May 31, 2019 report at all indicates that the ALJ did not consider the relationship factors in assessing this doctor's opinion.

The Court finds the ALJ erred by not addressing Dr. Martinovsky's May 31, 2019 opinion. Because consideration of this opinion could have impacted the RFC finding, which in turn formed the basis of the ALJ's conclusion that plaintiff was not disabled, this error was not harmless. The Court will remand this case for further administrative proceedings, including a new decision.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: September 18, 2024

SUSAN ILLSTON
United States District Judge